# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

---

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD and CONTINENTAL CASUALTY COMPANY,**

**Plaintiffs,**

**- v -**

**MEDICAL INFORMATICS ENGINEERING, INC., NOMORECLIPBOARD, LLC, RORY HILL, NICOLE HILL, DAWN MCLAUGHLIN, ADRIENNE LLEWELLYN, RYAN POOL, JAMES YOUNG, TERRI GREULICH, CYNTHIA WEINMAN, PATRICIA JUSTICE, SUSAN G. JONES, LEE ROTTINGHAUS, JEFFREY HAYES, SHANNON MUDD, STEPHEN JOHNSON, PATRICK MUDD, CORNELL TJADEN, SYLVIA TJADEN, SHARON EAGLE, DOUGLAS EAGLE, THOMAS JONES, STEVE WALKER, ANTOINETTE ANN FRANKLIN, KELLY MCGAHAN, TANYA AUTRY, IRA KUSHNER, SHICOLA WASHINGTON, SARAH LORD, MARY LUYSTERBURG, JOHN KULHA, ALLAN LEWIS, DAVID WAYNE PERRY, VIKAS CHANDNA, HERBERT L. SCHUTTLER, JEREMY BRANN, CYNTHIA BENOIT, FLOYD HARRIS, TRACI TAYLOR, JOE POIRIER, LAUREN FERN RAINESS, ANITA COLTER, ANTHONY BROWN, RICHARD LARSON, MICHAEL OSBOURN, MARK GUTH, RICHARD DIGOVINE, NANCY RICE, BRANDON WARRICK, JAMES MUELLER AND MICHELLE MOORE,**

**Defendants.**

---

**JURY TRIAL DEMANDED**

**Civil Action No.:**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD (NFICH), and CONTINENTAL CASUALTY COMPANY (CCC), foreign corporations, seek Declaratory Judgment for purposes of determining a question of actual, immediate controversy among the parties. Plaintiffs respectfully allege as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1.      This is an insurance coverage action for declaratory relief pursuant to 28 U.S.C. §§2201 and 2202 and IC 34-14-1-1 *et. seq.* NFIC and CCC seek a declaration of rights and obligations (if any) to defend or indemnify MEDICAL INFORMATICS ENGINEERING, INC. and NOMORECLIPBOARD, LLC (collectively MIE) in connection with the individual lawsuits and the Consolidated Class Action lawsuit (Data Breach Suits) filed against MIE in the U.S. District Court for the Northern District of Indiana which have been consolidated in Case No. 3:15-MD-2667 which seek damages and other relief for an alleged data breach which occurred in May 2015, and which MIE allegedly failed to disclose until after June 10, 2015.  Copies of the complaints have been attached as Exhibits A-T.

## PARTIES

2.      NFICH is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.  NFICH is a citizen of the State of Illinois and is licensed to do business in Indiana.

3.      CCC is a corporation organized and existing under the laws of Illinois with its principal place of business in Chicago, Illinois.  CCC is a citizen of the State of

Illinois and is licensed to do business in Indiana.

4.      Medical Informatics Engineering, Inc. is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. Medical Informatics Engineering, Inc. is a Defendant in the Data Breach Suits.  Medical Informatics Engineering, Inc. is a citizen of the State of Indiana and is licensed to do business in Indiana.

5.      NoMoreClipboard, LLC is an Indiana LLC with its principal place of business in Fort Wayne, Indiana.  Upon information and belief, NFICH and CCC believe that no members of NoMoreClipboard, LLC are residents of the state of Illinois. NoMoreClipboard, LLC is a Defendant in the Data Breach Suits.

6.      Defendants/Underlying Plaintiffs Adrienne Llewellyn, Rory Hill, Nicole Hill, Dawn McLaughlin, Ryan Pool, James Young, Cynthia Weinman, Patricia Justice, Susan G. Jones, Lee Rottinghaus, Jeffrey Hayes, Margaret Hayes, Eli Hayes, Darcy Norder, Patrick Kippert, James A. Martin, Shannon Mudd, Stephen Johnson, Patrick Mudd, Cornell Tjaden, Sylvia Tjaden, Sharon Eagle, Douglas Eagle and Thomas Jones are citizens of the State of Indiana.

7.      Defendants/Underlying Plaintiffs Antoinette Ann Franklin, Kelly McGahan and Tanya Autry are citizens of the State of Arkansas.

8.      Defendant/Underlying Plaintiff Ira Kushner is a citizen of the State of Arizona.

9.      Defendants/Underlying Plaintiffs Steve Walker, Shicola Washington, Terri Greulich and Sarah Lord are citizens of the State of California.

10.     Defendants/Underlying Plaintiffs Mary Luysterburg, John Kulha and Allan Lewis are citizens of the State of Florida.

11.     Defendants/Underlying Plaintiffs David Wayne Perry and Vikas Chandna are citizens of the State of Georgia.

12.     Defendant/Underlying Plaintiff Herbert L. Schuttler is a citizen of the State of Kansas.

13.     Defendant/Underlying Plaintiff Jeremy Brann is a citizen of the Commonwealth of Kentucky.

14.     Defendant/Underlying Plaintiff Cynthia Benoit is a citizen of the State of Louisiana.

15.     Defendants/Underlying Plaintiffs Floyd Harris, Traci Taylor and Joe Poirier are citizens of the State of Michigan.

16.     Defendant/Underlying Plaintiff Lauren Fern Rainess is a citizen of the State of Nevada.

17.     Defendants/Underlying Plaintiffs Anita Colter and Anthony Brown are citizens of the State of New Jersey.

18.     Defendant/Underlying Plaintiff Richard Larson is a citizen of the State of New Mexico.

19.     Defendant/Underlying Plaintiff Michael Osbourn is a citizen of the State of Ohio.

20.     Defendant/Underlying Plaintiff Mark Guth is a citizen of the State of Oregon.

21.     Defendants/Underlying Plaintiffs Richard DiGovine and Nancy Rice are citizens of the Commonwealth of Pennsylvania.

22.     Defendant/Underlying Plaintiff Brandon Warrick is a citizen of the State

of Texas.

      23.     Defendant/Underlying Plaintiff James Mueller is a citizen of the Commonwealth of Virginia.

      24.     Defendant/Underlying Plaintiff Michelle Moore is a citizen of the State of Washington.

      25.     Parties named in Paragraphs 6-24, as well as the alleged 3.9 million putative class members[1] will be collectively referred to as "Defendants/Underlying Plaintiffs".

      26.     Since the Defendants/Underlying Plaintiffs initiated the  Data Breach Suits, out of which this declaratory judgment action arises, they are interested parties and are named as defendants in this declaratory judgment action so that they will be bound by any judgment rendered herein.

## JURISDICTION AND VENUE

      27.     This is an action for declaratory relief pursuant to 29 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

      28.     An actual justiciable controversy between NFICH, CCC and MIE exists within the meaning of 28 U.S.C.§2201 regarding whether NFICH and CCC have any duty to defend or indemnify MIE under the NFICH and CCC Policies with respect to the claims asserted in the Data Breach Suits as more particularly described below.

      29.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(1) because the amount in controversy exceeds the sum or value of $75,000, exclusion of interest and costs, and the suit is between citizens of different states.

---

[1] Upon information and belief, as of the date of the filing of this complaint, no putative class action lawsuit has been certified.

30.     Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within this District. MIE resides in Indiana. Additionally all Defendants/ Underlying Plaintiffs have consented to litigation of their cases in the Northern District of Indiana.

## FACTUAL ALLEGATIONS

### A. The Underlying Lawsuits

31.     The Defendants/Underlying Plaintiffs filed separate class action suits against MIE which were consolidated for the purposes of efficient handling in the U.S. District Court for the Northern District of Indiana in case No. 3:15-MD-2667 (Data Breach Suits).  All of the Defendants/Underlying Plaintiffs assert that they were damaged as a result of MIE's alleged failure to protect its databases which contained Personal Medical Information (PMI) and Personal Identifiable Information (PII) of the Defendants/Underlying Plaintiffs and the alleged 3.9 million other putative class members. MIE's databases were allegedly breached on or about May 7, 2015 and the breach was not detected until on or after May 25, 2015.  (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

32.     The Defendants/Underlying Plaintiffs allege that their medical providers contracted with MIE for the storage of medical records for their patients. In order to obtain services from their medical providers, Defendants/Underlying Plaintiffs were allegedly required to provide PMI and PII to their providers, which was then entered into the   MIE   databases.   The   PMI   and   PII   included   information   such   as Defendants/Underlying Plaintiffs' dates of birth, mailing addresses, telephone numbers, email addresses, financial information and other protected health information.  (See Exs.

A-T, Defendants/Underlying Plaintiffs' complaints).

33.     Defendants/Underlying Plaintiffs allege that pursuant to HIPAA Privacy Rule and Security Rules, 45 CFR Part 160 and Part 164, Federal Trade Commission Act 15 U.S.C. §45,  and various state consumer protection and cyber security laws, MIE had an obligation to keep the Defendants/Underlying Plaintiffs' PMI and PII confidential and to protect the information from unauthorized disclosure. (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

34.     The Defendants/Underlying Plaintiffs allege that MIE was aware that its databases were improperly secured and knew or should have known that a data breach would likely result from its deficient security and privacy practices.  (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

35.     According to the Defendants/Underlying Plaintiffs, MIE contracted with Underlying Plaintiff's Health Care Providers to provide secure data storage and that as a result of MIE's failure to provide the level of data protection promised and that the Defendants/Underlying Plaintiffs indirectly paid for, MIE exposed their PMI and PII to an increased risk of misuse by unauthorized third parties. (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

36.     Some Defendants/Underlying Plaintiffs allege that they have suffered medical fraud, tax fraud, credit card fraud and phishing scams as a result of MIE's conduct.  (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

37.     Defendants/Underlying Plaintiffs allege that on or about May 7, 2015, third party hackers began the initial attack on MIE's servers.  The attack continued to at least May 26, 2015 (hereinafter referred to as the alleged Data Breach).  (See Exs. A-T,

Defendants/Underlying Plaintiffs' complaints).

38.     Defendants/Underlying Plaintiffs allege that MIE failed to notify the Defendants/Underlying Plaintiffs or any members of the putative class of the alleged Data Breach until on or after June 10, 2015.  (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

39.     Defendants/Underlying Plaintiffs allege that they have suffered damages. The Consolidated Class Action Complaint Plaintiffs assert:

> 3.  As a result of the MIE data breach, Breach Victims have been harmed. For example, Breach Victims have had fraudulent charges on various accounts. They have spent many hours filing police reports and monitoring credit reports and credit and bank accounts to combat identity theft. Many are now paying monthly or annual fees for identity theft and credit monitoring services. Now that their Personal and Medical Information has been released, Breach Victims must be super-vigilant and worry about being victimized for the rest of their lives. (See Ex. T, ¶3.)

(See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

40.     The Defendants/Underlying Plaintiffs allege that MIE failed to take adequate and reasonable security measures to protect the Defendants/Underlying Plaintiffs' PMI and PII and failed to take actions that could have prevented, or at least reduced the consequences of the breach.   By failing to take those measures, Defendants/Underlying Plaintiffs allege that MIE breached its duty to protect the Defendants/Underlying Plaintiffs' PMI and PII which allegedly resulted in the theft re of that information, which potentially exposed the Defendants/Underlying Plaintiffs, and the putative class members, to actual or imminent identity theft.   (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

41.     Based upon the foregoing allegations, the Defendants/Underlying Plaintiffs, on behalf of themselves and the putative class, assert causes of action against

MIE, including third party beneficiary claims for breach of contract, negligence, breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment, violation of certain state consumer laws, breach of certain state data breach and state data breach notification statutes, breach of certain state medical and health information privacy statutes, breach of implied contract, bailment and breach of fiduciary duty.  (See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

42.    The Defendants/Underlying Plaintiffs include Requests for Relief which are summarized as follows:

**(1)** Certification of the case as a class action and appointing appropriate class representatives and Class Counsel;

**(2)** Various forms of injunctive relief and other equitable relief necessary to protect the interests of the Class;

**(3)** An award of actual, compensatory, direct, consequential, statutory, punitive, treble and incidental damages;

**(4)** An award of equitable relief, restitution and disgorgement of profits;

**(5)** An award of further credit monitoring and identity theft protection services beyond the two years offered by MIE;

**(6)** Attorneys' fees, costs and expenses as provided by law or in equity; and

**(7)** Pre and post judgment interest.

(See Exs. A-T, Defendants/Underlying Plaintiffs' complaints).

**B.  The Primary and Umbrella Policies:**

**1.        The NFIC Primary Policy:**

43.    NFICH issued a primary general liability policy to MIE under policy no.

B 6012017961 for the March 1, 2015 to March 1, 2016 policy period (the Primary Policy). A true and correct copy of the Primary Policy is attached as Exhibit U.

44.     NoMoreClipboard, LLC is listed as a named insured on the Primary Policy.

45.     The Primary Policy provides commercial general liability limits of $1,000,000 "Each Occurrence," $1,000,000 "Personal and Advertising Injury" and $2,000,000 in "General Aggregate."

46.     The Primary Policy incorporates the Businessowners Liability Coverage Form No. SB-300000-D (Ed. 04/14). In the insuring agreement, NFICH agrees to provide coverage for "bodily injury," "property damage" and "personal and advertising injury" as follows:

**A.  Coverages**

**1.  Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury," to which this insurance does not apply. We may at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in Section **D** – Liability And Medical Expenses Limits Of Insurance; and

(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

See Ex. U, Form No. SB-300000-D, pg. 1.

47.     The Primary Policy defines "bodily injury" (as amended by the Blanket Additional Insured – Liability Extension) as "bodily injury, sickness or disease sustained by any person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease."  See Ex. U, Form No. SB-146932-E, pg. 4.

48.     The Primary Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Ex. U, Form No. SB-300000-D, pg. 14.

49.     The Primary Policy defines "personal and advertising injury" as:

**14.**     "Personal and advertising injury" means injury, including

11

consequential "bodily injury," arising out of one or more of the following offenses:

**a.**  False arrest, detention or imprisonment;

**b.**  Malicious prosecution;

**c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**  The use of another's advertising idea in your "advertisement"; or

**g.**  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

See Ex. U, Form No. SB-300000-D, pg. 15.

50.     The Primary Policy defines "property damage" as:

**17.**  "Property damage" means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured.

All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

12

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

See Ex. U, Form No. SB-300000-D, pg. 15.

51.     The Primary Policy defines "software" as:

> **18.**     "Software" means**:**
>
>> **a.**   Electronic data processing, recording or storage media such as films, tapes, cards, discs, drums or cells; and
>>
>> **b.**   Data and programming records used for electronic data processing or electronically controlled equipment stored on such media; and
>>
>> **c.**   Written or printed data, such as programs, routines, and symbolic languages, essential to the operation of computers; and
>>
>> **d.**   Documents containing information on the operation and maintenance of computers.

See Ex. U, Form No. SB-300000-D, pg. 15.

52.     The Primary Policy contains the following exclusions, providing that

"[t]his insurance does not apply to:

> **j. Professional Services**
>
> "Bodily injury," "property damage," "personal and advertising injury" caused by the rendering or failure to render any professional services. This includes but is not limited to:
>
> * * *
>
> **(12)**     Services rendered in connection with the creation and/or development, modification, or repair of "software," including, but not limited to design, specifications, system or "software" configuration and consultation.

13

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury," involved the rendering or failure to render any professional service.

\* \* \*

**p.  Personal And Advertising Injury**

"Personal and advertising injury":

\* \* \*

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'

\* \* \*

**(6)** Arising out of breach of contract, except an implied contract to use another's advertising idea in your advertisement;

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'

**q.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

See Ex. U., Form No. SB-300000-D, pgs. 7-8

53.    The Primary Policy also contains, by endorsement, the "Recording and

14

Distribution of Material Or Information in Violation of Law Exclusion" (hereinafter the "Distribution of Material or Information" exclusion), which applies to the Policy's "bodily injury," "property damage" and "personal and advertising injury" coverage as follows:

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.**   The following exclusion is added to Section **B.** EXCLUSIONS of the Businessowners Liability Coverage Form:

**2.   Exclusions**

This insurance does not apply to:

**q.   Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**   The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**   The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)**   Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal,  collecting, recording, sending, transmitting, communicating  or distribution of material or information.

15

**B.**   The following exclusion is added to Section **B.** EXCLUSIONS, Paragraph **p.** Personal And Advertising Injury:

### 2.   Exclusions

This insurance does not apply to:

### (15)   Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**   The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**   The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)**   Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Ex. U, Form No. SB-300849-A.

54.   The Primary Policy contains the Duties In The Event Of Occurrence, Offense, Claim or Suit provision which provides:

### 2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.**   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**   How, when and where the "occurrence" or offense took place;

16

    **(2)**  The names and addresses of any injured persons and witnesses; and

    **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

    **(1)**  Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)**  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

    **(1)**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claims or "suit";

    **(2)**  Authorize us to obtain records and other information;

    **(3)**  Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

    **(4)**  Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

See Ex. U, Form No. SB-300000-D, pg. 12

55.    The Primary Policy defines "suit" as:

**19.**    "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

17

**a.**    An arbirtration proceeding in which such damages
are claimed and to which the insured must submit or does
submit with our consent; or

**b.**    Any other alternative dispute resolution proceeding in
which such damages are claimed and to which the insured
submits with our consent.

See Ex. U., Form No. SB-300000-D, pg. 16

**2.  <u>The CCC Umbrella Policy:</u>**

56.    CCC issued a Commercial Umbrella Plus Policy to MIE under policy

no. B 6016637557 for the March 1, 2015 to March 1, 2016 policy period (the

Umbrella Policy). A true, correct and certified copy of the Umbrella Policy is

attached as Exhibit V.

57.    NoMoreClipboard, LLC is an additional insured on the Umbrella Policy.

58.    The Umbrella Policy incorporates the Commercial Umbrella Plus

Coverage Part, Form No. G-15057-C (Ed. 06/05).  In the insuring agreement, CCC agrees

to provide coverage for "bodily injury," "property damage" and "personal and advertising

injury" for "ultimate net loss" in excess of "scheduled" or "unscheduled" underlying

insurance as follows:

**SECTION I – COVERAGES**

**1.        Insuring Agreement**

We will pay on behalf of the insured those sums in excess of "scheduled
underlying insurance," "unscheduled underlying insurance" or the
"retained limit" that the insured becomes legally obligated to pay as
"ultimate net loss" because of "bodily injury", "property damage" or
"personal and advertising injury" to which this insurance applies.

**a.**  This insurance applies to "bodily injury" and "property damage" only if:

**(1)**  The "bodily injury" or "property damage" is caused by an

18

"incident" anywhere in the world;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

* * *

**d.** This insurance applies to "personal and advertising injury" caused by an "incident" committed anywhere in the world during the policy period.

See Ex. V., Form No. G-15057-C, pg. 1.

59.     The Umbrella Policy defines "bodily injury" as:

**3. "Bodily injury"** means bodily injury, sickness or disease sustained by  a person, including death, humiliation, shock, mental anguish or **mental** injury by that person at any time which  results  as  a consequence of the bodily injury, sickness or disease.

See Ex. V, Form No. G-15057, pg. 11.

60.     The Umbrella Policy defines "incident" as:

**9. "Incident"**

**a.** With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**b.** With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

See Ex. V, Form No. G-15057-C, pg. 12.

61.     The Umbrella Policy defines "Personal and Advertising Injury" as:

**10. "Personal and Advertising Injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution or abuse of process;

**c.** Wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

**d.** Discrimination, unless such insurance is prohibited by law;

**e.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.** The use of another's advertising idea in your "advertisement";

**h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

See Ex. V, Form No. G-15057-C, pg. 12.

62.    The Umbrella Policy defines "property damage" as:

**12.    "Property damage"** means:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

See Ex. V, Form No. G-15057-C, pg. 13.

63.    The Umbrella Policy defines "retained limit," "scheduled underlying

20

insurance," "ultimate net loss," "underlying insurer," and "unscheduled underlying insurance" as follows:

16. **"Retained limit"** means the amount stated as such in the Declarations. The "retained limit" is retained and payable by the insured as respects all "incidents" not covered by "scheduled underlying insurance" or by "unscheduled underlying insurance."

17. **"Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

18. **"Ultimate net loss"**

   **a.** "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

     **(1)** Final adjudication on the merits; or

     **(2)** Through compromise settlement with our written consent or direction;

   because of "incident(s)" covered by this policy.

   However, it includes the above mentioned sums only after deducting all other recoveries and salvages.

   **b.** "Ultimate net loss" does not include the following:

     **(1)** Costs or expenses related to:

       **(a)** Litigation;

       **(b)** Settlement;

    **(c)** Adjustment; or

    **(d)** Appeals;

    nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

  **(2)** Pre-judgment interest;

  **(3)** Office costs and expenses and salaries and expenses of the employees of an insured;

  **(4)** Our office costs and expenses and salaries of our employees; or

  **(5)** General retainer and/or monitoring fees of counsel retained by the insured.

**19. "Underlying insurer"** means an insurer whose policy covers "bodily injury," "property damage" or "personal and advertising injury" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing:

  **a.** "Unscheduled underlying insurance"; and

  **b.** "Scheduled underlying insurance."

**20. "Unscheduled underlying insurance"**

  **a.** "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

    **(1)** Primary;

    **(2)** Excess;

**(3)** Excess-contingent; or

**(4)** Otherwise;

except the policies listed in the Schedule of Underlying Insurance.

    **b.** "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

See Ex. V, Form No. G-15057-C, pp. 13-14.

64.    The Umbrella Policy defines "electronic data" as:

    **23.**    **"Electronic data"** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD- ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

See Ex. W, Form No. G-15057-C, pg. 14.

65.    The Umbrella Policy contains the Duties of the Insured provision which

provides:

    **2.**    **Duties of the Insured**

    **a.**    In the event of an "incident" which has not resulted in a claim or suit.

    Whenever you have information of an "incident" which involves injuries or damages likely to involve this policy, written notice shall be given by or for you to us or to our authorized agent as soon as practicable. The notice shall contain:

    **(1)**    Particular information sufficient to identify the insured;

**(2)**   Such information as can be reasonably obtained with respect to time, place and circumstances of the occurrence or offense; and

**(3)**   Names and addresses of the insured and of available witnesses.

**b.**   In the Event of Claims or Suit

You shall provide us with written notice as soon as practicable whenever:

**(1)**   A claim is made or "suit" is brought against you;

**(2)**   You receive notice that a right to bring claim or "suit" against you will be asserted; or

**(3)**   You obtain information that the obligation of "underlying insurers" to:

**(a)**   Investigate;

**(b)**   Defend;

**(c)**   Pay on behalf of; or

**(d)**   Indemnify

you has ceased.

Every demand, notice, summons, amended complaint or other process received by you or your representative shall be forwarded with each notice.

See Ex. V, Form No. G-15057-C (Ed. 06/05), pgs.8-9.

66.   The Umbrella Policy defines "suit" as:

**13.**   "Suit" means a civil proceeding in which damages because of

**a.**   "bodily injury";

**b.**   "property damage"; or

   **c.**  "personal and advertising injury"
      to which this insurance applies are alleged.
     "Suit" includes:

   **a.**  An arbitration proceeding alleging such damages to
      which you must  submit with our consent; or

   **b.**  Any other alternative dispute resolution proceeding in
      which such damages are claimed and to which you
      submit with our consent.

   See Ex. V, Form No. G-15057-C (Ed. 06/05), pg.13.

   67.   The Umbrella Policy contains the following exclusions which provide that

the Umbrella policy does not apply to:

   **c.**   **Personal And Advertising Injury**

     "Personal and advertising injury":

   **(1)**   Caused by or at the direction of the insured with the
       knowledge that the act would violate the rights of
       another and would inflict 'personal and advertising
       injury.'

         * * *

   (5)   Arising out of breach of contract, except an implied
       contract to use another's advertising idea in your
       advertisement;

   (6)   Arising out of the failure of goods, products or services
       to conform with any statement of quality or performance
       made in your 'advertisement.'

         * * *

   **r.**   **Electronic Data**

     Any liability arising out of the loss of, loss of use of, damage
     to, corruption of, inability to access, or inability to manipulate

"electronic data".

68.     The Umbrella Policy contains the "Do Not Call" exclusion which

provides that "[t]his insurance does not apply to:

> **bb.     Do Not Call**
>
> Any liability arising directly or indirectly out of any action or
> omission that violates or is alleged to violate:
>
> > **(1)** The Telephone Consumer Protection Act (TCPA),
> > including any amendment of or addition to such law; or
> >
> > **(2)** The CAN-SPAM Act of 2003, including any amendment of
> > or addition to such law; or
> >
> > **(3)** Any statute, ordinance or regulation, other than the TCPA or
> > the CAN-SPAM Act of 2003, that prohibits or limits the
> > sending, transmitting, communicating or distribution of
> > material or information.

See Ex. V, Form No. G-15057-C, pg. 14.

69.     The Umbrella Policy contains the "Personal and Advertising

Injury Limitation Endorsement," which provides that "this insurance does not apply to:

> 'personal and advertising injury.' However, this exclusion does not apply to
> any claim or suit for which coverage is provided by 'scheduled underlying
> insurance."

See Ex. V, Form No. G-17900-B

70.     The Umbrella Policy contains, by endorsement, the "Technology

Services Professional Liability Limitation" exclusion.  This endorsement states:

> The following exclusion is added to **SECTION I –   COVERAGE,   2.
> Exclusions:**
>
> This insurance does not apply to any liability arising out of any act, error,
> or omission in the rendering or failure to render:

26

* * *

**4)** creation, development, modification, repair, selling, distributing, licensing, franchising or furnishing any computer software, programs, designs, specifications, manuals or instructions;

**5)** any evaluation, consultation or advice given concerning telecommunications equipment or services; (spacing)

* * *

**7)** the failure of any insured to adequately provide internet access or telecommunications services.

However, this exclusion does not apply to "Bodily Injury," "Property Damage," or "Personal and Advertising Injury" to which any policy of "scheduled underlying insurance" applies or would apply but for the exhaustion of its limits of liability.

See Ex. V, Form NO. G-300569-A.

## <u>COUNT I</u>

### FOR DECLARATORY JUDGMENT THAT NFICH
### DOES NOT OWE A DUTY TO DEFEND

71.     NFICH hereby incorporates and re-alleges the allegations in paragraphs

1 – 70  above as if fully set forth herein.

72.     NFICH does not owe a duty to defend MIE in the Data Breach Suits

under the Primary Policy for the following reasons:

a.     The Data Breach Suits do not seek damages because of "bodily injury."

b.     The Data Breach Suits do not seek damages because of "property damage."

c.      The Data Breach Suits do not seek damages because of "personal and advertising injury."

d.      Even if the Data Breach Suits were to seek damages for "personal and advertising injury," any alleged "personal and advertising injury" was not caused by an "offense" during the primary policy period.

e.      Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the exclusion j., the "Professional Services" exclusion, which precludes coverage for "'personal and advertising injury' . . . [c]aused by the rendering or failure to render professional services, including services rendered in connection with the creation, development, modification, or repair of "software," including but not limited to the design, specifications, system or "software" configuration and consultation.

f.      Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the exclusion p.(1), the "Knowing Violation" exclusion, which precludes coverage for "'personal and advertising injury' . . . (1) [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury."

g.      Even if the Data Breach Suits were to seek damage for "personal and advertising injury," coverage is barred by exclusion p.(6), the "Breach of Contract" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (6) [a]rising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement."

h.      Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion p.(7), the "Failure of Services" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (7) [a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

i.      Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion q., the "Electronic Data" exclusion, to the extent that any alleged "personal and advertising injury" arose out of "the loss, loss of use, damage to, corruption of, inability to access, or inability to manipulate

28

electronic data.

j.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the "Recording and Distribution of Material in Violation of Law Exclusion" on grounds that any alleged "personal and advertising injury" arose "directly or indirectly out of any action or omission that violates or is alleged to violate . . . (4) [a]ny federal, state or local statute, ordinance or regulation . . . that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

k.   Pursuant to the Duties in the Event of Claim or Suit provision, MIE failed to give timely and proper notice of certain claims and "suits" as required by the Primary Policy.

73.   Upon information and belief, MIE disagrees with NFICH's coverage position and maintains that NFICH owes a duty to defend MIE in the Data Breach Suits.  Thus, an actual controversy exists between the parties.

74.   NFICH seeks a judicial determination that it has no duty to defend MIE in the Data Breach Suits under the Primary Policy.

## COUNT II

## FOR DECLARATORY JUDGMENT THAT NFICH
## DOES NOT OWE A DUTY TO INDEMNIFY

75.   NFICH hereby incorporates and re-alleges the allegations in paragraphs 1 – 74 above as if fully set forth herein.

76.   NFICH does not owe a duty to indemnify MIE for any judgment or settlement awarded against it in the Data Breach Suits under the Primary Policy for the following reasons:

a.   The Data Breach Suits do not seek damages because of "bodily injury."

b.   The Data Breach Suits do not seek damages because of "property damage."

c.   The Data Breach Suits do not seek damages because of "personal and advertising injury."

d.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," any alleged "personal and advertising injury" was not caused by an "offense" during the Primary Policy period.

e.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the exclusion j., the "Professional Services" exclusion, which precludes coverage for "'personal and advertising injury' . . . [c]aused by the rendering or failure to render professional services, including services rendered in connection with the creation, development, modification, or repair of "software" including but not limited to the design, specifications, system or "software" configuration and consultation.

f.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion p.(1), the "Knowing Violation" exclusion, which precludes coverage for "'personal and advertising injury' . . . (1) [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

g.   Even if the Data Breach Suits were to seek damage for "personal and advertising injury," coverage is barred by exclusion p.(6), the "Breach of Contract" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (6) [a]rising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement."

h.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion p.(7), the "Failure of Services" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (7) [a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

i.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion q., the "Electronic Data" exclusion, to the extent that any alleged "personal and advertising injury" arose out of "the loss, loss of use, damage to, corruption of, inability to access, or inability to manipulate electronic data."

30

j.  Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the "Recording and Distribution of Material in Violation of Law Exclusion" on grounds that any alleged "personal and advertising injury" arose "directly or indirectly out of  any action or omission that violates or is alleged to violate . . . (4) [a]ny federal, state or local statute, ordinance or regulation . . . that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information."

k.  Pursuant to the Duties in the Event of Claim or Suit provision, MIE failed to give timely and proper notice of certain claims and "suits" as required by the Primary Policy.

l.  Any punitive or exemplary damages awarded against MIE in the Data Breach Suits are not damages covered by a liability policy as a matter of law and public policy.

m.  Claims for equitable or injunctive relief do not seek damages as that term is used in the Primary Policy.

77.    Upon information and belief, MIE disagrees with NFICH's coverage position and maintains that NFIC owes a duty to indemnify MIE for any judgment or settlement awarded against it in the Data Breach Suits.  Thus, an actual controversy exists between the parties.

78.    NFICH seeks a judicial determination that it has no duty to indemnify MIE for any judgment or settlement awarded against it in the Data Breach Suits under the Primary Policy.

## COUNT III

### FOR DECLARATORY JUDGMENT THAT
### CCC DOES NOT OWE A DUTY TO DEFEND

79.    CCC hereby incorporates and re-alleges the allegations in paragraphs

1 – 78 above as if fully set forth herein.

      80.    CCC does not owe a duty to defend MIE in the Data Breach Suits under

the Umbrella Policy for the following reasons:

    a.   The Data Breach Suits do not seek damages because of "bodily injury."

    b.   The Data Breach Suits do not seek damages because of "property damage."

    c.   The Umbrella Policy does not provide coverage for "personal and advertising injury."

    d.   To the extent the "personal and advertising injury coverage" is provided by "scheduled underlying insurance," the Data Breach Suits do not seek damages because of "personal and advertising injury."

    e.   To the extent that "personal and advertising injury coverage" is provided by "scheduled underlying insurance,"  the Data Breach Suits do not seek damages because of  "personal and advertising injury" caused by an incident during the Umbrella Policy period.

    f.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the exclusion c.(1), the "Knowing Violation" exclusion, which precludes coverage for "'personal and advertising injury' . . . (1) [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury."

    g.   Even if the Data Breach Suits were to seek damage for "personal and advertising injury," coverage is barred by exclusion c.(5), the "Breach of Contract" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (5) [a]rising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'"

    h.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion c.(6), the "Failure of Services" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (6) [a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

  i. Coverage for the Data Breach Suits is barred by exclusion r., the "Electronic Data" exclusion, which precludes coverage for "[a]ny liability arising out of the loss, loss of use, damage to, corruption of, inability to access, or inability to manipulate 'electronic data'."

  j. Coverage for the Data Breach Suits is barred by exclusion bb., the "Do Not Call" exclusion, which precludes coverage for any liability arising "directly or indirectly out of any action or omission that violates or is alleged to violate . . . (3) [a]ny statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

  k. Coverage for the Data Breach Suits is barred by "Technology Services Professional Liability Limitation" exclusion, which precludes coverage for any act, error or omission in the rendering or failure to render technology services.

  l. Pursuant to the Duties of the Insured provision, MIE failed to give proper notice to CCC of certain claims and/or "suits" as required by the Umbrella Policy.

81. Upon information and belief, MIE disagrees with CCC's coverage position and maintains that CCC owes a duty to defend MIE in the Data Breach Suits. Thus, an actual controversy exists between the parties.

82. CCC seeks a judicial determination that it has no duty to defend MIE in the Data Breach Suits under the Umbrella Policy.

## COUNT IV

### FOR DECLARATORY JUDGMENT THAT
### CCC DOES NOT OWE A DUTY TO
### INDEMNIFY

83. CCC hereby incorporates and re-alleges the allegations in paragraphs 1 – 82 above as if fully set forth herein.

84. CCC does not owe a duty to indemnify MIE in the Data Breach Suits under the Umbrella Policy for the following reasons:

a.   The Data Breach Suits do not seek damages because of "bodily injury."

b.   The Data Breach Suits do not seek damages because of "property damage."

c.   The Umbrella Policy does not provide coverage for "personal and advertising injury."

d.   To the extent that "personal and advertising injury" coverage is provided by scheduled underlying insurance, the Data Breach Suits do not seek damages because of "personal and advertising injury."

e.   To the extent that "personal and advertising injury coverage" is provided by "scheduled underlying insurance,"  the Data Breach Suits do not seek damages because of  "personal and advertising injury" caused by an incident during the Umbrella Policy period.

f.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by the exclusion c.(1), the "Knowing Violation" exclusion, which precludes coverage for  "'personal and advertising injury' . . . (1) [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury."

g.   Even if the Data Breach Suits were to seek damage for "personal and advertising injury," coverage is barred by exclusion c.(5), the "Breach of Contract" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (5) [a]rising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement."

h.   Even if the Data Breach Suits were to seek damages for "personal and advertising injury," coverage is barred by exclusion c(6), the "Failure of Services" exclusion, which precludes coverage for a "'personal and advertising injury' . . . (6) [a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement."'"

i.   Coverage for the Data Breach Suits is barred by exclusion r., the "Electronic Data" exclusion, which precludes coverage for any liability arising out of "the loss, loss of use, damage to, corruption of, inability to access, or inability to manipulate electronic data'."

j.   Coverage for the Data Breach Suits is barred by exclusion bb., the "Do Not Call" exclusion, which precludes coverage for any liability arising "directly or indirectly out of any action or omission that violates or is alleged to violate . . . (3) [a]ny statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

k.   Coverage for the Data Breach Suits is barred by "Technology Services Professional Liability Limitation" exclusion, which precludes coverage for any act, error or omission in the rendering or failure to render technology services.

l.   Pursuant to the Duties of the Insured provision, MIE failed to give proper notice to CCC of certain claims and/or "suits" as required.

m.   Any punitive or exemplary damages awarded against MIE in the Data Breach Suits are not damages covered by a liability policy as a matter of law and public policy.

n.   Claims for equitable or injunctive relief do not seek damages as that term is used in the Umbrella Policy.

85.   Upon information and belief, MIE disagrees with CCC's coverage position and maintains that CCC owes a duty to indemnify MIE in the Data Breach Suits. Thus, an actual controversy exists between the parties.

86.   CCC seeks a judicial determination that it has no duty to indemnify MIE in the Data Breach Suits under the Umbrella Policy.

87.   NFICH and CCC reserve the right to amend these pleadings as other coverage defenses, exclusions and the like may present themselves during the pendency of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, National Fire Insurance Company of Hartford and Continental Casualty Company respectfully pray for judgment against Medical Informatics Engineering, Inc., NoMoreClipboard, LLC, Rory Hill, Nicole Hill, Dawn

35

McLaughlin, Adrienne Llewellyn, Ryan Pool, James Young, Terri Greulich, Cynthia Weinman, Patricia Justice, Susan G. Jones, Lee Rottinghaus, Jeffrey Hayes, Shannon Mudd, Stephen Johnson, Patrick Mudd, Cornell Tjaden, Sylvia Tjaden, Sharon Eagle, Douglas Eagle, Thomas Jones, Steve Walker, Antoinette Ann Franklin, Kelly McGahan, Tanya Autry, Ira Kushner, Shicola Washington, Sarah Lord, Mary Luysterburg, John Kulha, Allan Lewis, David Wayne Perry, Vikas Chandna, Herbert L. Schuttler, Jeremy Brann, Cynthia Benoit, Floyd Harris, Traci Taylor, Joe Poirier, Lauren Fern Rainess, Anita Colter, Anthony Brown, Richard Larson, Michael Osbourn, Mark Guth, Richard DiGovine, Nancy Rice, Brandon Warrick, James Mueller and Michelle Moore as follows:

   a.   Declaring that NFICH has no duty to defend MIE in the Data Breach Suits;

   b.   Declaring that NFICH has no duty to indemnify MIE in the Data Breach Suits;

   c.   Declaring that CCC has no duty to defend MIE in the Data Breach Suits;

   d.   Declaring that CCC has no duty to indemnify MIE in the Data Breach Suits;

   e.   Awarding NFICH and CCC their costs for this suit; and

   f.   Awarding NFICH and CCC such further relief this Court deems just.

**DEMAND FOR JURY
TRIAL**

Plaintiffs request a trial by jury for all factual matters in this action.

Dated:  May 13, 2016

                                    /s/ Philip E. Kalamaros
                                    Philip E. Kalamaros 11722-71
                                    HUNT SUEHOFF KALAMAROS LLP

301 State Street, P.O. Box 46
St. Joseph, MI 49085
269/983-7646
*Attorney for Plaintiffs*

*Of Counsel*
Katherine Streicher Arnold
Susan Luther
COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS
333 South Wabash Avenue, 25th Floor
Chicago, IL 60604
Telephone: (312) 822-6306
Facsimile: (312) 817-2486
Email: Katherine.Arnold@cna.com
        Susan.Luther@cna.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2016, I caused to be filed, electronically, the foregoing, with the Clerk of Court using the CM/ECF system which sent notification of such filing to each attorney as disclosed by the Court's record. A copy of said filing may also be viewed at www.innd.uscourts.gov

By:          /s/ Philip E. Kalamaros

Philip E. Kalamaros (#11722-71)